IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EBOOKS WEB COM, LLC,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| **THE HANOVER INSURANCE** | : | |
| **COMPANY,** | : | |
| *Defendant.* | : | No. 25-cv-2923 |

**MEMORANDUM**

**KENNEY, J.**                                                                         **August 29, 2025**

Plaintiff EBooks Web Com, LLC moves to compel appraisal in a lawsuit against its insurer Defendant The Hanover Insurance Company[1] (ECF No. 1-1 at 19–21). For the reasons set forth below, the Motion will be **DENIED** without prejudice.

**I.    BACKGROUND**

Plaintiff is a book seller that was insured by Defendant from 2022–2023. *See* ECF No. 14-1 at 3. On December 10, 2022, Plaintiff suffered a fire at its property in Bensalem, Pennsylvania, ECF No. 1-1 at 19, which, among other things, damaged Plaintiff's book inventory. *See* ECF No. 18 at 9; ECF No. 14-2 at 2.

It is undisputed that Plaintiff's insurance policy covers losses caused by fire. *See* ECF No. 13 at 1. The insurance policy also contains a clause titled "Appraisal," which states:

> If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser.
>
> The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having

---

[1] Though Plaintiff named the Hanover Insurance Group as the defendant, Defendant clarifies that the proper designation is the Hanover Insurance Company. *See* ECF No. 13 at 1.

> jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> **a.** Pay its chosen appraiser; and
> **b.** Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.

ECF No. 14-1 at 38. The policy also contains a provision governing disagreements and appraisals regarding "the value of the property," which is otherwise identical to the above provision. *See id.* at 115.

After the fire, Plaintiff determined the amount of loss it suffered to be worth $16,041,394.10. *See* ECF No. 1-1 at 24. Defendant, however, assessed the amount of loss differently, and it paid Plaintiff $4,254,771.10.[2] *See* ECF No. 13 at 2; *see also* ECF No. 14 at 5. Plaintiff then demanded appraisal under the Parties' appraisal clause, which, according to Plaintiff, Defendant refused. ECF No. 1-1 at 21; *see* ECF No. 13 at 4.

Thereafter, Plaintiff filed the instant Motion to Compel Appraisal in the Philadelphia County Court of Common Pleas.[3] *See* ECF No. 1-1 at 19. The Motion seeks for a court to "compel the parties to engage in the appraisal process as outlined in the insurance policy." *Id.* at 21. Defendant subsequently removed the case to this Court, *see* ECF No. 1 at 1, where Plaintiff's Motion is now pending.

## II.     LEGAL STANDARD

When this Court's jurisdiction is based on diversity of citizenship, state substantive law, and federal procedural law, applies. *See G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 261

---

[2] Plaintiff also alleges that Defendant estimated $9,117,983 in replacement cost coverage. ECF No. 1-1 at 24. However, Plaintiff does not appear to argue that such a sum has been paid out, *see id.*, and Defendant admits only to paying out $4,254,771.10, ECF No. 13 at 2.
[3] After a writ of summons was issued, Plaintiff filed this Motion in lieu of a complaint. *See* ECF No. 1-1 at 9–12, 19–21.

(3d Cir. 2009). Here, the Parties agree that Pennsylvania's substantive law governs. *See* ECF No. 1-1 at 22; ECF No. 14 at 1. Under Pennsylvania law, appraisal clauses are enforceable. *Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974).

### III.    DISCUSSION

Appraisal is an alternative to litigation for determining the amount of loss. *McGourty v. Pa. Millers Mut. Ins. Co.*, 704 A.2d 663, 664 (Pa. Super. Ct. 1997) (per curiam). It "place[s] a difficult factual question—the replacement value of an item—into the hands of those best-equipped to answer that question"—appraisers. *Meier v. Wadena Ins. Co.*, 95 F.4th 514, 517 (7th Cir. 2024) (citation omitted). But in light of their specialized expertise, appraisers address only one aspect of a case: Besides the value of the loss, "all other issues [are] reserved for settlement by either negotiation or litigation." *McGourty*, 704 A.2d at 664 (citing *Ice City, Inc.*, 314 A.2d at 240 n.12); *see Dagit v. Allstate Prop. & Cas. Ins. Co.*, No. CV 16-3843, 2017 WL 395489, at *3 (E.D. Pa. Jan. 30, 2017) (appraisal is proper when there is a dispute "only as to the dollar value of the loss"); Jordan R. Plitt et al., 15 Couch on Insurance § 209:8 (3d ed. updated June 2025) (appraisal involves referring a "matter involving only the ascertainment of facts" to an appraiser). And where there are outstanding disputes concerning insurance policy coverage, "the more efficient practice for the parties, the appraisers, and the Court is to decide [those] disputes before an appraisal is conducted." *Coral Crystal, LLC v. Fed. Ins. Co.*, No. 17-CV-1007, 2020 WL 5350306, at *13 (S.D.N.Y. Sept. 3, 2020).

Defendant argues that appraisal is premature in light of three disputes between the Parties: whether (1) the insurance policy's actual cash value provisions or replacement cost value provisions apply to older books in Plaintiff's inventory, (2) the policy covers Plaintiff's affiliated entities, and (3) Plaintiff submitted flawed data regarding its losses. ECF No. 14 at 2–5. Because the first and second disputes are about more than the dollar value of Plaintiff's losses, appraisal is

premature. However, the third dispute is proper for an appraiser to resolve.

### A. Dispute as to Application of the Policy to Older Books

First, the Parties dispute how to value older books in Plaintiff's inventory. Specifically, the Parties disagree about whether the insurance policy's actual cash value or replacement cost value provisions apply to older books. *See* ECF No. 14 at 2–3. Because this is a dispute about interpreting the insurance policy, not a factual dispute about the value of the loss, it is inappropriate for appraisal.

There are a number of references to actual cash value and replacement cost value in the Parties' policy. *See* ECF No. 14-1 at 87, 104. And the policy specifies that in some instances, Defendant will compensate losses based on actual cash value, rather than replacement cost value. *Id.* For example, though the parties fail to point this Court to specific provisions of their insurance policy with respect to this issue, the policy states that "[a]ny property that does not currently serve a useful or necessary function for you" will "be valued on an Actual Cash Value basis." *Id.* at 104. Determining which section of the policy governs older books—an actual cash value section or a replacement cost value section—is a matter of insurance policy interpretation. *See Milligan v. CCC Info. Servs.*, 920 F.3d 146, 153 (2d Cir. 2019) (where a party claimed that a method of calculating her loss violated a provision of the insurance policy, that was an interpretive dispute inappropriate for appraisal). Because insurance policy interpretation raises legal questions about the meaning of the policy, rather than only factual questions about what dollar value to assign to the loss, it is not suitable for appraisal. *See Williamson v. Chubb Indem. Ins. Co.*, No. 11-CV-6476, 2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012); *cf. Scottsdale Ins. Co. v. Altman Mgmt. Co.*, 832 F. App'x 998, 999 (6th Cir. 2021) (as a matter of Michigan law, it was proper for an appraiser to resolve "factual disputes" after the district court interpreted the insurance policy).

In response, Plaintiff argues that an appraiser will determine both the actual cash and

replacement cost value of inventory and "the carrier will then make its determination as to what is to be paid accordingly." ECF No. 18 at 10. However, Plaintiff points to no part of the insurance policy supporting the conclusion that Defendant is free to choose between actual cash and replacement cost value. Instead, the Parties appear to disagree about which provisions of the policy apply. And because there is a disagreement over the application of the policy, "the more efficient practice" is for that dispute to be resolved "before an appraisal is conducted," instead of waiting for this dispute to return to court after an appraiser does double the number of calculations. *See Coral Crystal, LLC*, 2020 WL 5350306, at *13.

Defendant claims that, in addition to disputing whether the policy's actual cash value or replacement cost value provisions apply, the Parties disagree as to whether Defendant can make deductions for obsolescence when valuing older books. *See* ECF No. 14 at 3. The Parties' insurance policy states that actual cash value is "subject to a deduction for . . . obsolescence." ECF No. 14-1 at 26. Just as with the above, whether this provision applies to older books is a matter of interpreting the insurance policy—a litigation issue which renders appraisal premature.

B.  Dispute as to Entities Affiliated with Plaintiff

Next, Defendant argues that the Parties disagree about whether Plaintiff's affiliated entities are covered by the insurance policy. According to Defendant, the data accompanying Plaintiff's insurance claims incorporates the sales and income of these affiliated entities. *See* ECF No. 14-2 at 5 (stating that the "filings submitted by [Plaintiff] identify sales and income for" a list of eleven affiliated entities). And whether Plaintiff can claim losses based on the sales and income of those entities raises the issue of whether the affiliated entities are covered by the policy. That coverage issue is unsuitable for appraisal. *See McGourty*, 704 A.2d at 664.

In its reply brief, Plaintiff appears to concede that it will make claims only for its own losses. *See* ECF No. 18 at 10 (Plaintiff is "only seeking appraisal . . . of losses that fall under

5

Ebooks Web Com LLC."). But the Court will not treat a single statement in a reply brief as an admission, which would render Plaintiff's argument a moving target. *See Barna v. Bd. of Sch. Dirs. of the Panther Valley Sch. Dist.*, 877 F.3d 136, 146 (3d Cir. 2017). Plaintiff does not dispute that its data included the sales and income of its affiliated entities. *See* ECF No. 18 at 10. Whether Plaintiff can claim those losses requires a court to address, or the Parties to resolve, the threshold issue of whether the affiliated entities are covered by the insurance policy.

### C. Dispute as to Plaintiff's Financial Data

Lastly, Defendant argues that the Parties dispute whether the financial data Plaintiff submitted with its insurance claim is flawed. *See* ECF No. 14 at 4. This dispute may be resolved through the appraisal process.

Assessing the accuracy of data and determining how much weight to assign to it are factual questions intertwined with calculating the amount of loss. *See Gronik v. Balthasar*, No. 10-CV-00954, 2014 WL 2739333, at *3 (E.D. Wis. June 17, 2014) (concluding that appraisers "did not have to accept plaintiffs' assertion[s]" regarding losses and were entitled to rely on their own expertise); *Erenrich v. Cincinnati Ins. Co.*, No. CV 2:23-1857, 2025 WL 975045, at *2 (W.D. Pa. Mar. 31, 2025) (finding "persuasive" a case in which nothing in the parties' appraisal provision "require[d] the umpire to accept the loss as reported by the insured"). Because these issues are part of the valuation process, short of fraud or bad faith, they fall within an appraiser's scope of expertise and are appropriate for appraisal. *See id.* (the method of calculating damages "pertain[s] to the value of the business loss, not whether the loss was covered, and, thus, [is] appropriate . . . for appraisal"). And unlike the Parties' first and second disputes, this dispute does not raise antecedent issues regarding coverage or policy interpretation. An appraiser may therefore decide how much to credit Plaintiff's data.

* * * *

The Parties dispute which sections of the insurance policy apply to older books and whether the policy covers losses suffered by affiliated entities. Because those are issues of policy interpretation and coverage, rather than solely a matter of assigning a dollar amount of Plaintiff's loss, "appraisal is premature at this time." *7Group, LLC v. Mt. Hawley Ins. Co.*, No. 23-CV-6656, 2023 WL 8024159, at *3 (S.D.N.Y. Nov. 20, 2023) (finding appraisal to be premature due to coverage issues). To the extent the Parties are unable to resolve their coverage and policy interpretation issues through negotiation, they may do so through motions practice before this Court.

## IV.   CONCLUSION

In light of the foregoing, Plaintiff's Motion (ECF No. 1-1 at 19–21) will be **DENIED** without prejudice.

**BY THE COURT:**

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**